IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSICA LYNN RAKER,** | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO. 10-2885 |
| v. | : | |
| **BAR-BQ PIT, INC.,** | : | |
| Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                              November  25, 2013

      Throughout the course of this litigation, the sole defendant, a corporation, has been unable or unwilling to keep counsel.  Insisting that paying counsel fees to defend this action was a waste of money, non-party Hippocrates "Lucky" Deligiannis, a principal of the defendant corporation, appeared determined to represent the corporation on his own.  However, "it has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."  Rowland v. California Men's Colony, 506 U.S. 194, 201-202 (1993); see also United States v. Cocivera, 104 F.3d 566, 572-573 (3d Cir. 1996) ("[T]he general rule [is] that a corporation may not be represented by other than licensed counsel . . . .").  This rule is also codified at 28 U.S.C. § 1654, which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  In Rowland, the Supreme Court held that § 1654 "does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed

attorney." 506 U.S. at 202. Mr. Deligiannis was repeatedly informed of the importance of securing counsel for the defendant corporation.

A month before trial, originally scheduled to begin on June 18, 2012, I granted defense counsel's motion to withdraw his representation, and stayed all further proceedings for sixty days to allow the defendant corporation to secure the services of replacement counsel. See Document #34. On July 17, 2012, following a status conference, I stayed all proceedings for an additional sixty days because the defendant had still not secured counsel. See Document #38. On October 18, 2012, counsel entered her appearance on behalf of the defendant. See Document #40. By the end of December 2012, counsel filed a notice of withdrawal of appearance, followed by a motion to withdraw. See Documents #42 and #43. Following a status conference, I granted counsel's motion.[1] See Document #45. Counsel indicated that she had been "fired" by Mr. Deligiannis. She also informed the court that had she not been "fired," she would have requested to withdraw because the defendant had breached its duty to cooperate as outlined in the retainer agreement. For example, despite repeated requests, Mr. Deligiannis continued to refuse to deliver to counsel the file from the corporation's original attorney, which made it impossible for counsel to fulfill her obligations to her client. In addition to granting counsel's motion to withdraw, I scheduled the trial to begin on March 18, 2013, with or without defense counsel. Id.

---

[1] The record indicates that, in addition to those attorneys who had entered appearances on behalf of the defendant and subsequently withdrew, there were two other attorneys who had written letters to plaintiff's counsel on behalf of the defendant, but never entered appearances.

On February 12, 2013, Plaintiff Jessica Lyn Raker filed a motion for entry of default and a motion for entry of default judgment, both on the issue of liability, pursuant to Rule 55 of the Federal Rules of Civil Procedure.  See Documents #46 and #47.  In late February 2013, less than three weeks before trial, Mr. Deligiannis submitted a letter to the court, as a principal of the defendant, indicating that the defendant had no way of defending itself at trial.  Accordingly, I granted the plaintiff's motions for default and default judgment, ordered that the trial would be limited to the offering of evidence pertaining to damages, and directed the Clerk of Court to enter default, but to defer the entry of default judgment pending the court's computation of damages.  See Document #48.

At trial, Miss Raker consented to proceed non-jury.  See N.T. 3/18/13 at 5.  Although the defendant was notified of the date, time, and location of the hearing to assess damages, the defendant did not appear.  Miss Raker testified under oath that she worked as a server for the defendant from November 2007 through to July 2008, at an hourly rate of $8.25.  Id. at 11-12, 14.  She currently works full-time at a rate of $12.10.[2]  Id. at 15.

Miss Raker further testified that during those months of employment with the defendant, she was subjected to a hostile work environment due to the constant sexual harassment of Mr. Deligiannis.  This conduct included unwelcomed touching and kissing, notwithstanding her pleas for him to stop.  Id. at 23-24.  Mr. Deligiannis also made

---

[2] The plaintiff conceded at trial that she had fully mitigated her damages by January 17, 2001.  See N.T. 3/18/13 at 34.

- 3 -

inappropriate comments about Miss Raker's body on several occasions.  Id. at 24-25.  Mr. Deligiannis frequently asked Miss Raker to go on vacations with him or on overnight trips on his boat.  Id. at 42-43.  Miss Raker testified that having some kind of sexual encounter with him was implicit in his invitations.  Id.

Once, Miss Raker was at the restaurant with some friends when Mr. Deligiannis approached her from behind, placed his hand under her shirt, and touched her breasts.  Id. at 45.  Miss Raker immediately complained to one of Mr. Deligiannis's daughters who refused to speak about the incident, but paid Miss Raker's bill.  Id. at 47.

Miss Raker described another incident where she and a co-worker were having something to eat at the restaurant.  Mr. Deligiannis came and sat next to Miss Raker.  Mr. Deligiannis immediately placed his hand or her knee, continued up her leg onto her thigh, and stopped with his hand on her crotch.  Id. at 51-52.  All of this inappropriate behavior greatly upset Miss Raker and caused her much stress.  Id. at 26, 27, 53, 60.  Despite the suggestions of her father and her boyfriend to quit the job, Miss Raker felt that it was impossible to quit because she had two young daughters to support.  Id. at 27.

Miss Raker also testified that she was retaliated against for making complaints about Mr. Deligiannis's behavior to his daughters, the managers of the restaurant.  Id. at 46, 47, 48, 56.  Miss Raker estimated that she complained to one or both of these daughters approximately one hundred times.  Id. at 48.  Once, when she complained to one of the daughters about a specific incident, the daughter screamed at Miss Raker in front of the others at the restaurant, and ordered her to get her things and go home.  Id. at 49.  Because of these complaints, Miss Raker's work hours were gradually reduced so

that eventually she was not even scheduled to work. Id. at 16, 17, 18, 19, 34. In fact, the more she complained, the fewer hours she was scheduled to work. Id. at 57. No one to whom Miss Raker complained ever attempted to stop Mr. Deligiannis's behavior. Id. at 59.

Based upon the allegations set forth in the complaint which have been treated as admissions of fact by default, and based upon the plaintiff's uncontroverted testimony and evidence offered at the hearing, the plaintiff has established a *prima facie* case of employment discrimination based on her gender, see Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008), based on retaliation, see Moore v. City of Philadelphia, 461 F.3d 331, 341-342 (3d Cir. 2006), based on a hostile work environment, see Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986), and a *prima facie* case of the state law tort of intentional infliction of emotional distress, see Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998). Further, the plaintiff's constant complaints to the defendant's management regarding the hostile work environment, its outright dismissal of those complaints, its lack of action to stop the continued harassment, and its retaliatory conduct against the plaintiff provide a more than adequate basis for employer liability. See Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998) ("the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively by the employer").

Besides the financial effects this had on her, Miss Raker testified that her experience at the defendant corporation affected her emotionally. At the hearing, she credibly testified to the emotional pain and distress, the suffering, mental anguish, and

loss of enjoyment of life, all of which she experienced as a result of the defendant's illegal conduct. She had problems sleeping, a decrease in appetite, and increased stress. It also affected her relationship with her boyfriend.

After considering Miss Raker's uncontroverted testimony, the evidence she submitted at the hearing, and her uncontested motion for default judgment, I find that the plaintiff is entitled to an award of damages[3] as set forth in the Order which follows.

---

[3] Although the law provides that punitive damages may be granted in an employment discrimination case where the employer acted with malice or with reckless indifference to a federally protected right, see Le v. Univ. of Pa., 321 F.3d 403, 410 n.4 (3d Cir. 2003), I will deny the plaintiff's request for punitive damages as inappropriate here.